1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
8                   NORTHERN DISTRICT OF CALIFORNIA
9
10   LAURIN L. DESSEAUX,
11              Plaintiff,
12        v.                              No. C 05-01997 MHP
13   JO ANNE B. BARNHART,                 **MEMORANDUM & ORDER**
     Commissioner of Social Security,     **Re: Cross-Motions for Summary**
14                                         **Judgment**
              Defendant.
15
16   _____/
17

18        Claimant Laurin Desseaux brought this action pursuant to 42 U.S.C. section 405(g) seeking

19   judicial review of a Social Security Administrative Law Judge's final decision. The ALJ denied

20   Desseaux's request for disability insurance benefits. Now before the court are the parties' cross-

21   motions for summary judgment. Having considered the arguments presented and for the reasons

22   stated below, the court enters the following memorandum and order.

23

24   BACKGROUND

25   I.    Factual Background

26        Claimant is a fifty-two-year-old man with a high school education and one year of college, as

27   well as vocational training in carpentry. Certified Administrative Transcript ("TR") at 175. Before

28   ceasing work completely in December 2001, id. at 209, claimant worked in construction and general

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   carpentry for various employers.  Id. at 211.  Claimant alleges that severe back pain and depression

2   have rendered him unable to work since February 8, 2002.  Id. at 210.

3       Claimant attributes his disabling injuries to a fall from scaffolding during a construction job

4   in 1978.  See, e.g., id. at 104.  Claimant has seen a number of doctors, chiropractors, and physical

5   therapists over the past few years for treatment and evaluation of his back problems and depression.

6   The doctors' reports reflect several diagnoses of depression and related mental disorders, as well as

7   several different diagnoses that provide medical explanations for claimant's back pain.  See, e.g., id.

8   at 103 (treating physician Wyman's March 6, 2002 diagnosis of "degenerative change in C5–6 and

9   some foraminal narrowing on the left in the same area"); id. at 117 (Dr. Wyman's March 29, 2002

10  diagnosis, following claimant's MRI, of "[e]arly central spinal stenosis at the C4–5 level due to

11  shingling and paracentral left calcified disk protrusion," "[m]oderate central spinal stenosis at the

12  C5–6 level due to posterior central broad based partially calcified disk protrusion and 'shingling,'"

13  and "calcified disk protrusion at the C6–7 level" which "encroach[es] on the thecal sac but not the

14  spinal cord" or "the exiting nerve rootlet"); id. at 144 (treating physician Bohachevsky's May 21,

15  2002 assessment that claimant suffers from cervical spondylosis, cervical stenosis without cervical

16  myelopathy, sacroiliac joint dysfunction, and thoracic segmental dysfunction); id. at 111 (Dr.

17  Wyman's July 2003 assessment from an MRI that claimant has "[m]inor disc degenerative

18  changes . . . with a slight dorsal central disc protrusion at L5–6, not producing any canal or

19  foraminal encroachment").

20      Claimant was told by at least two physicians that his back pain was virtually untreatable.  See

21  id. at 107 (Dr. Wyman's April 3, 2002 statement that claimant is "still having significant pain and

22  there is nothing we can do from this end to help him"); id. at 138 (Dr. Bohachevsky's June 24, 2002

23  statement that there was little else that could be done to help claimant with his pain, and that

24  claimant "has had pain for 24 years and it may be very difficult to get rid of completely").

25      Claimant consulted with Dr. Fairley, a chronic pain specialist, beginning in July 2003.  Dr.

26  Fairley prescribed Lortab, Drixoral, and Amitriptyline to help claimant deal with his pain.  Id. at

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

2

UNITED STATES DISTRICT COURT
For the Northern District of California

133.  Claimant told Dr. Fairley that the pain medication helped him "do a little more," including some gardening and attending an outdoor concert.  Id. at 132.

Claimant also complains of tingling and numbness in his hands, which is reflected in various doctors' reports.  See, e.g., id. at 143 (Dr. Bohachevsky's May 21, 2002 conclusion that "Phalen is positive at both wrists . . . with tingling in his fingers"); id. at 144 (Dr. Bohachevsky's diagnosis of thoracic outlet syndrome and recommendation that claimant "would benefit from scalene stretching, as well as first rib mobilization to decrease his hand symptoms"); id. at 105 (Dr. Britton's May 14, 2002 finding of positive Tinel and Phalen's tests, and numbness and tingling in claimant's hands).  In addition, claimant has complained of head tremors.  See, e.g., id. at 135 (Dr. Fairley's July 28, 2003 notation that claimant has a head tremor that "appears to start at [his] neck.").

With respect to claimant's depression, claimant paid several visits to the Southwest Colorado Mental Health Center in 2002.  At his initial intake at the Center, he was diagnosed with "serious to moderate" depression.  Id. at 153.  Dr. Willenbucher later diagnosed claimant with major depression due in part to chronic back pain.  Although the Center offered to work out a payment schedule with claimant, claimant attended only seven therapy sessions, claiming he was unable to continue for financial reasons.  Id. at 147.  Dr. Fairley, who was treating claimant for pain, also prescribed Effexor for claimant's depression in August 2003.  Id. at 132.

II.     Procedural Background

On March 11, 2002, with a protective filing date of February 8, 2002, claimant filed an application for Supplemental Security Income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. sections 401–433, alleging a disability onset date of January 15, 1997.  TR at 39–43.  Claimant's application was denied on May 24, 2002.  Id. at 34–38.  Claimant then requested a hearing to appeal the denial of his application on August 2, 2002.[1]  Id. at 31–32.  A hearing before an administrative law judge ("ALJ") was held on September 10, 2003.  Id. at 205.

At the hearing, the ALJ considered claimant's testimony, the available medical evidence, the arguments of claimant's former attorney Mr. Robert Dawes, and the testimony of vocational expert

3

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   Anthony Manuele.  Id. at 205–47.  In a decision dated October 16, 2003, the ALJ found that

2   claimant had several "severe impairments," including cervical degenerative disc disease at C5–7,

3   lumbar degenerative disc disease at L4–5, and depression.  Id. at 17.  The ALJ further found that the

4   tingling and numbness in claimant's hands and the tremors in his head were not caused by a

5   medically determinable impairment, and therefore did not amount to severe impairments under the

6   Act.  Id.  The ALJ concluded that claimant's severe impairments did not meet or equal any listed

7   impairment in the Social Security regulations, and thus that claimant possessed the residual

8   functional capacity[2] to perform

9          light work with the following limitations: lift and carry 10 pounds frequently, 20
           pounds occasionally; sit about 6 hours in an 8-hour day, briefly standing in the
10         workspace after each 1-hour period; stand/walk about 6 hours in an 8-hour day,
           briefly sitting in the workspace after each 1-hour period; no ladder, rope, or scaffold
11         climbing; occasional stair climbing, stooping, and crawling; frequent balancing,
           kneeling, and crouching; frequent overhead reaching, bilaterally; avoid concentrated
12         exposure to extreme cold, wetness, and vibration; understand, remember, and carry
           out simple instructions which can be learned in 30–60 days; and which involve
13         routine, repetitive tasks.

14   Id. at 22.  Based on claimant's residual functional capacity, the ALJ found that claimant could

15   perform work as a garment bagger, production assembler, hand bander, electronics worker, and

16   cashier.  Id. at 23.  Having found that claimant could perform several jobs that exist in significant

17   numbers in the national economy, the ALJ concluded that claimant was not disabled within the

18   meaning of the Act.

19          Claimant filed a request for review of the ALJ's decision with the Appeals Council on

20   December 15, 2003.  Id. at 165–67.  The Appeals Council denied claimant's request for review on

21   March 11, 2005, making the ALJ's decision the final decision for purposes of judicial review.  Id.

22   at 5.  Claimant subsequently filed the instant complaint before this court on May 16, 2005, asserting

23   that the ALJ's decision denying benefits was erroneous.  On February 20, 2006, claimant filed a

24   motion for summary judgment, and defendant responded with a cross-motion for summary judgment

25   and an opposition to claimant's motion for summary judgment on March 22, 2006.

26          Claimant argues that the ALJ's decision denying Social Security benefits was erroneous for

27   three reasons.  First, claimant argues that the ALJ failed to consider objective medical evidence

28

4

UNITED STATES DISTRICT COURT
For the Northern District of California

1   which established that claimant's numbness, tingling and tremors are caused by a medically

2   determinable impairment.  Second, claimant asserts that the ALJ failed to follow the proper

3   procedure when considering claimant's mental impairment due to depression.  Third, claimant

4   argues that the ALJ's determination that claimant's pain testimony was not fully credible was not

5   supported by substantial evidence.

6

7   LEGAL STANDARD

8          A federal district court may not disturb a final decision of the Commissioner of Social

9   Security unless the decision is based on legal error or the fact findings are not supported by

10  substantial evidence.  42 U.S.C. § 405(g); Sprague v. Bowen, 812 F.2d 1226, 1229 (9th Cir. 1987).

11  "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person

12  might accept as adequate to support a conclusion."  Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir.

13  1993).  The court's review "must consider the record as a whole," including evidence that supports

14  the Commissioner's decision and evidence that detracts from it.  Desrosiers v. Sec'y of Health &

15  Human Servs., 846 F.2d 573, 576 (9th Cir. 1988).  Nonetheless, where evidence is susceptible to

16  more than one rational interpretation, one of which supports the Commissioner's decision, the court

17  must defer to the Commissioner's decision and may not substitute its judgment for the

18  Commissioner's.  See Reddick v. Chater, 157 F.3d 715, 720–21.  The Commissioner's

19  determinations of law, however, are reviewed de novo.  See McNatt v. Apfel, 201 F.3d 1084, 1087

20  (9th Cir. 2000).  Thus, even if substantial evidence supports the Commissioner's factual findings,

21  "the decision should be set aside if the proper legal standards were not applied in weighing the

22  evidence and making the decision."  Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978) (citing

23  Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968)).

24         Finally, where the Appeals Council denies a claimant's request for review of an ALJ's

25  decision, the ALJ's decision becomes the final agency decision for purposes of the district court's

26  review.  See, e.g., Webb v. Barnhart, 433 F.3d 683, 685 (9th Cir. 2005).

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   <u>DISCUSSION</u>

2       The Social Security Act defines disability as "the inability to engage in any substantial

3   gainful activity by reason of any medically determinable physical or mental impairment which can

4   be expected to result in death or which has lasted or can be expected to last for a continuous period

5   of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant has the burden of establishing

6   a disability under the Act. <u>See, e.g.</u>, <u>Webb</u>, 433 F.3d at 686.

7       To determine whether a claimant is disabled under the Act, the ALJ engages in a five-step

8   sequential analysis. 20 C.F.R. § 404.1520. At each step, if the ALJ can determine that the claimant

9   is disabled or not disabled, the ALJ need not advance to the next step. <u>Id.</u> § 404.1520(a)(4). At the

10  first step, if the ALJ determines that the claimant is engaged in "substantial gainful activity," the

11  claimant will not be found disabled. <u>Id.</u> § 404.1520(a)(4)(i). At step two, the ALJ considers the

12  medical severity of the claimant's impairments. <u>Id.</u> § 404.1520(a)(4)(ii). If the claimant's medically

13  determinable physical or mental impairment is not severe, the claimant will not be found disabled.

14  <u>Id.</u> At step three, the ALJ will determine whether the claimant's impairment or combination of

15  impairments are equivalent to a listed impairment. <u>Id.</u> § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404,

16  Subpt. P, App. 1. At step four, the ALJ determines whether the claimant is able to perform past

17  relevant work. <u>Id.</u> § 404.1520(a)(4)(iv). Past relevant work is work that a claimant has performed

18  within the past fifteen years, that was a substantial gainful activity, and that lasted long enough for

19  the claimant to learn the necessary skills to perform the work. <u>Id.</u> § 404.1560(b). If the claimant can

20  perform past relevant work, he or she will not be found disabled. <u>Id.</u> Finally, at the fifth step, the

21  ALJ considers whether the claimant's impairment or combination of impairments prevent the

22  claimant from performing other jobs that exist in significant numbers in the national economy. <u>Id.</u>

23  § 404.1520(a)(4)(v).

24

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

I.      Severity of the Numbness, Tingling and Tremors

At the second step of the analysis, the ALJ concluded that claimant's numbness, tingling, and head tremors were not severe.  Claimant argues that this conclusion was not supported by substantial evidence.

An ALJ may find that an impairment or combination of impairments is "not severe [at step two of the analysis] *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on the individual's ability to work."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (emphasis added).  The Commissioner has elaborated that where "an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on an individual's ability to do basic work activities, the sequential evaluation should not end with" the second step of the evaluation.  Social Security Ruling ("SSR") No. 85-28 (1985).  The Ninth Circuit has thus found that step two "is a *de minimus* screening device used to dispose of groundless claims, . . . and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when [the ALJ's] conclusion is clearly established by medical evidence."  Webb, 433 F.3d at 687 (internal quotations omitted).  Based on the requirements under step two, the court finds the ALJ erred by not finding the numbness and tingling in claimant's hands severe.  However, the court finds that there is insufficient evidence to find that claimant's head tremors are severe.


A.      Numbness and Tingling

Claimant first argues that the ALJ erroneously disregarded objective medical evidence that substantiated claimant's assertion that he experienced numbness and tingling in his hands that affected his ability to work.  Where a claimant complains that subjective symptoms, such as pain, numbness, or tingling prevent him from engaging in any substantial gainful activity, "an ALJ must perform two stages of analysis: the Cotton analysis and an analysis of the credibility of the claimant's testimony regarding the severity of [the] symptoms."  Smolen, 80 F.3d at 1281.  The Ninth Circuit established the Cotton test in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986).  To meet the Cotton test, a claimant must (1) produce objective medical evidence of an impairment; and

UNITED STATES DISTRICT COURT
For the Northern District of California

1   (2) show that the impairment or combination of impairments could reasonably be expected to

2   produce some degree of the complained of symptom.  Smolen, 80 F.3d at 1282.  The Cotton test

3   does not require a claimant to produce objective medical evidence of the symptom itself, nor of the

4   symptom's severity.  Id.  "If the claimant produces evidence to meet the Cotton test and there is no

5   evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her

6   symptoms only by offering specific, clear and convincing reasons for doing so."  Id. at 1281.

7          Social Security Ruling 96-4p provides further guidance for determining whether a claimant's

8   subjective symptoms constitute a severe impairment under the Act:

9          [R]egardless of how many symptoms an individual alleges, or how genuine the
          individual's complaints appear to be, the existence of a medically determinable
10         physical or mental impairment cannot be established in the absence of objective
          medical abnormalities; i.e., medical signs and laboratory findings.  No symptom or
11         combination of symptoms by itself can constitute a medically determinable
          impairment.  In claims in which there are no medical signs or laboratory findings to
12         substantiate the existence of a medically determinable physical or mental impairment,
          the individual must be found not disabled at step 2 of the sequential evaluation
13         process. . . .

14   SSR 96-4p (1996).

15         The ALJ found that the tingling and numbness in claimant's hands were not severe because

16   "EMG testing showed no carpal tunnel syndrome or any other medical source for these symptoms."

17   TR at 17.  As claimant points out, there was other objective medical evidence that the ALJ

18   apparently overlooked or disregarded that could account for the tingling and numbness.

19   Specifically, Dr. Bohachevsky, who examined claimant in May 2002, noted that

20         Phalen is positive at both wrists at about 35 seconds with tingling in his fingers.
          Abduction and external rotation of the left shoulder causes tingling in the fingers after
21         about 15 seconds.  This is also positive in the right with tingling occurring after about
          10 seconds in this same position.

22
23   Id. at 143.  Based on these tests, Dr. Bohachevsky stated that claimant exhibited "evidence of

24   thoracic outlet syndrome and would benefit from scalene stretching, as well as first rib mobilization

25   *to decrease hand symptoms*."  Id. at 144 (emphasis added).  The ALJ erred by not considering

26   thoracic outlet syndrome as objective medical evidence supporting claimant's testimony that he

27   experienced numbness and tingling in his hands.  See Cotton, 799 F.2d at 1408–09 (finding legal

28   error where the ALJ completely ignored medical evidence without giving specific, legitimate

8

1   reasons for doing so).  Evidence of thoracic outlet syndrome is enough to satisfy the *de minimus*

2   standard of step two, establishing that the numbness and tingling in claimant's hands were severe

3   under the Act.

4         In addition to this objective medical evidence, several doctors noted the existence of these

5   symptoms.  For example, claimant reported the numbness and tingling in his hands to Cortez

6   Chiropractic in 1999.  Id. at 129, 131.  Dr. Britton, whom claimant saw in May 2002 at the Social

7   Security Administration's request, reported that Claimant had a "positive Tinel sign bilaterally" and

8   that his "Phalen's test was positive as well."[3]  Id. at 105.  Dr. Britton also noted that the Phalen's test

9   bothered claimant more in his shoulders than in his wrists, "though his hands did get numb and

10  tingly."  Id. at 105.

11        There was also testimony at the hearing regarding the numbness and tingling in claimant's

12  hands.  Claimant testified that both of his hands "go to sleep" quite often, and that when he

13  experiences that sensation he loses some of the functions in his hands.  Id. at 226.  Claimant reported

14  that he drops objects that he does not normally hold, such as cigarettes and pencils.

15        On the existing record, the ALJ's reason for rejecting claimant's complaint as to the

16  numbness and tingling in his hands is "not substantial enough to meet the 'clear and convincing'

17  standard when balanced against [his] doctors' contemporaneous observations, some objective tests

18  and [his] subjective complaints."  Webb, 433 F.3d at 687.  The ALJ must account for the entire

19  record, and may not selectively note some evidence while disregarding other, contradictory

20  evidence.  See Penny, 2 F.3d at 957 (reversing the ALJ's decision because he "ignored substantial

21  evidence on the overall record").

22        Defendant argues that claimant cannot demonstrate that his hand symptoms meet the twelve-

23  month duration requirement under the Act.  42 U.S.C. § 423(d)(1)(A).  Defendant notes that

24  claimant relies on complaints of numbness and tingling to his chiropractor in June and August 1999,

25  but argues that, since the relevant period begins when claimant filed his application in March 2002,

26  these complaints are irrelevant.  Defendant also notes that claimant did not complain of numbness

27  and tingling in his hands again until May 2002.

28

9

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    Defendant's argument is unavailing for at least two reasons.  First, the ALJ found that

2    claimant's numbness and tingling sensations were not severe because of the negative EMG test, and

3    not because the impairment failed to meet the duration requirement.  TR at 17.  The Commissioner

4    may not now raise an argument that was not relied upon by the ALJ.  See, e.g., Jones v. Apfel, 2000

5    WL 1456907 at *19 (D. Or. 2000) (The district court "must review only the ALJ's decision and not

6    subsequent arguments raised by the Commissioner.").

7    Second, even if the ALJ had relied on the duration requirement in rejecting claimant's

8    application, finding that claimant's numbness and tingling do not meet the duration requirement

9    would be contrary to the Act.  20 C.F.R. section 416.909 specifies that unless a claimant's

10    "impairment is expected to result in death, it must *have lasted* or must be expected to last for a

11    continuous period of at least 12 months."  (Emphasis added).  When claimant filed his claim in

12    March 2002, he was required to supply evidence that his impairments were expected to last or had

13    already lasted for at least twelve months.  The evidence that he experienced the symptoms in June

14    and August of 1999 was relevant to establish that the duration requirement had already been

15    satisfied.

16    The fact that there is no evidence in the record that claimant sought medical treatment

17    between August 1999 and May 2002 does not serve to refute claimant's testimony that he had

18    experienced numbness and tingling in his hands since at least 1999.  See, e.g., Penny, 2 F.3d at 958

19    (failing to seek medical treatment for over three years "does not in any way prove" that the claimant

20    was not suffering from his impairment as he claimed at his hearing).

21    Defendant also notes that claimant denied numbness in his legs and arms in a visit to Dr.

22    Bohachevsky in June 2002.  TR at 138.  However, claimant does not assert that the numbness and

23    tingling affect his hands at all times, but only "quite often."  Id. at 226.  Furthermore, Dr.

24    Bohachevsky reported only on claimant's arms and legs.  It is unclear whether the doctor was

25    including claimant's hands in that assessment.

26    After finding the numbness and tingling in claimant's hands not severe, the ALJ was able to

27    disregard those impairments when determining claimant's residual functional capacity.  As a result,

28

10

UNITED STATES DISTRICT COURT
For the Northern District of California

1    the ALJ posed inapposite hypothetical questions to the vocational expert, because they all relied on

2    the ALJ's finding that the numbness and tingling were not severe.  All four hypothetical situations

3    posed by the ALJ allowed frequent use of the hypothetical individual's hands.  Id. at 236–44.  Based

4    on these hypothetical questions, the vocational expert suggested job categories that claimant may not

5    be able to perform, such as cashier.  Id.

6         Thus, as to the issue of the severity of the numbness and tingling in claimant's hands, the

7    court REVERSES the ALJ's finding that the impairment was not severe, and REMANDS to pose

8    appropriate hypothetical questions to a vocational expert.

9

10        B.    Tremors

11        Claimant next argues that the ALJ erred by not finding that claimant's tremors constitute a

12   severe impairment under the Act.

13        The ALJ noted that the "only doctor who even made a notation regarding [claimant's]

14   tremors [was] Dr. Fairley[, who] wrote that [claimant] reported head tremors on his first visit, but

15   never mentioned head tremors again."  TR at 21.  Dr. Fairley did not prescribe any diagnostic testing

16   or medication for claimant's tremors.  Id.

17        In fact, there were other physicians who noted claimant's tremors.  See, e.g., id. at 157

18   (Southwest Colorado Mental Health Center doctor's May 2002 notation of claimant's tremors

19   during his initial assessment); id. at 112 (an emergency room physician's December 31, 2002

20   notation that claimant had a tremor).

21        Defendant emphasizes that the medical records include only *notations* of claimant's tremors,

22   and that no physician diagnosed or treated claimant for his tremors.  Defendant argues that the

23   tremors constitute a subjective complaint about a symptom, without any objective medical findings

24   to explain the existence of the symptom, and that therefore, the tremors do not amount to a disability

25   under the Act.  Indeed, unlike claimant's complaints of numbness and tingling in his hands, also

26   noted by several doctors, claimant's tremors are not supported by any objective medical evidence.

27

28

11

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Claimant confuses physicians' accounts of *witnessing* his tremors with the Act's requirement

2    that a physician provide a medical *reason* for the symptom.  The mere restatement of a patient's

3    symptoms by a physician is not enough to constitute an impairment under the Act.  See Ukulov v.

4    Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (stating that the records did not support a finding of

5    impairment because they were based solely on the claimant's own description of his symptoms).

6    Claimant did not provide evidence of a medically determinable physical impairment that might give

7    rise to the tremors, and thus did not meet his burden under the Act.  Therefore, the ALJ correctly

8    determined that claimant's tremors were not severe under the second step of the analysis.

9

10   II.    Credibility of Claimant's Pain Testimony

11   Claimant's next argument is that the ALJ failed to provide sufficient reasoning for his

12   conclusion that claimant's pain testimony was not fully credible.  Defendant counters that the ALJ's

13   credibility findings were thorough and based on substantial evidence.

14   Under the Cotton analysis, discussed supra Part I.A, if there is no evidence that a claimant is

15   malingering, the ALJ must cite clear and convincing reasons in order to support a finding that

16   claimant is not fully credible with regard to his pain.  Smolen, 80 F.3d at 1281.

17   Here, claimant offered objective medical evidence of an impairment, and indeed, the ALJ

18   found that claimant suffered from cervical degenerative disc disease at C5–7 and lumbar

19   degenerative disc disease at L4–5.  TR at 17.  However, although the ALJ "accept[ed] that the

20   claimant suffers from pain, secondary to his back impairments," the ALJ considered claimant's

21   testimony about the severity of his pain not "fully credible."  Id. at 21.  The ALJ cited no evidence

22   that claimant was malingering.[4]  Therefore, under the Cotton test, the ALJ was required to provide

23   specific, clear and convincing reasons for disbelieving claimant's testimony that the severity of his

24   pain precluded him from engaging in any substantial gainful activity.

25   Social Security Ruling 88-13 provides factors for the adjudicator to consider when

26   evaluating the credibility of testimony regarding pain and other subjective symptoms.  These

27   factors include (1) the nature, location, onset, duration, frequency, radiation, and intensity of any

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   pain; (2) precipitating and aggravating factors, such as movement or environmental conditions; (3)

2   type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) treatment, other

3   than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities.

4   SSR 88-13 (1988).  "The SSR 88-13 factors ensure that the determination of disability is not a

5   wholly subjective process, turning solely on the identity of the adjudicator."  Bunnell v. Sullivan,

6   947 F.2d 341, 346 (9th Cir. 1991).  In addition,

> [t]he ALJ may consider . . . : (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

10  Smolen, 80 F.3d at 1284.

11          The ALJ offered the following reasoning for his finding that claimant's pain testimony was

12  not fully credible:

> Despite allegations of constant, intense pain, the claimant did not seek any treatment until almost 3 months after he insisted he was unable to work.  He has continued to chores [sic], and Dr. Britton described him as "physically active."  At the hearing, the claimant maintained that his pain reaches 10/10 fairly regularly, however, he told Dr. Bohachevsky that his maximum pain was 9/10, and Dr. Farley [sic, Fairley] that his pain ranged from 4–8/10.  He has never exhibited pain with range of motion, and Dr. Adams noted no pain behavior during his evaluation.  The claimant also maintained that he is completely unable to bend and that his doctor is concerned about his head and hand tremors.  However, Dr. Britton noted that the claimant could bend 90 degrees.  The only doctor who even made a notation regarding the claimant's tremors is Dr. Farley [sic].  She wrote that the claimant reported head tremors on his first visit, but never mentioned them again.  She did not prescribe any diagnostic testing or prescribe any treatment or medication.

20  TR at 21.

21          As claimant notes, certain of the ALJ's findings are not dispositive on their own.  See, e.g.,

22  Webb, 433 F.3d at 688 (stating that the fact that a claimant "has carried on certain daily activities,

23  such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract

24  from his credibility as to his overall disability.  One does not need to be utterly incapacitated in

25  order to be disabled."); Penny, 2 F.3d at 958 (failing to seek medical treatment for back pain for

26  three years "does not in any way prove that [a claimant's] testimony concerning his pain at the time

27  of his hearing was not credible.").

28

13

However, the ALJ did not rely solely on claimant's inconsistent treatment history or on the fact that claimant regularly performs household chores to reach his conclusion about claimant's credibility; instead, these two facts contribute to an overall conclusion that claimant's testimony regarding his pain was not completely sincere.  The ALJ's statement of specific reasons for discrediting claimant's complaints of pain is sufficient.  The ALJ was justified in considering claimant's ability to perform household chores, the statements made by treating and consultative physicians, the inconsistent treatment for his pain, claimant's inconsistent statements about the extent of his pain, and claimant's general demeanor at the hearing to determine that claimant's pain testimony was not fully credible.  As the ALJ supported his credibility findings with clear and convincing evidence, this court may not disturb those findings.

III.    Mental Impairment Evaluation

Claimant's final argument is that the ALJ failed to describe in adequate depth the reasoning behind his determination of claimant's mental residual functional capacity.  Defendant maintains that the ALJ followed the proper procedure in determining claimant's mental residual functional capacity.

In evaluating a claimant's mental impairments, the Social Security Administration employs "a special technique," distinct from the five-step procedure that applies to determinations of physical impairments.  20 C.F.R. § 416.920a(a).  For purposes of this action, this special technique may be divided into four steps.  First, the adjudicator must evaluate the claimant's "pertinent symptoms, signs, and laboratory findings" to determine whether the claimant has a medically determinable impairment.  Id. § 416.920a(b)(1).  If the adjudicator decides that the claimant has a medically determinable mental impairment, the adjudicator must then "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s)."  Id.  If the claimant does not have a medically determinable mental impairment, the special technique does not apply.  Second, the adjudicator must rate the degree of the claimant's functional limitation due to the claimant's mental impairment in four areas: activities of daily living; social functioning; concentration,

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  persistence, or pace; and episodes of decompensation.  Id. §§ 416.920a(b)(2), (c).  The functional

2  limitations rating is "based on the extent to which [the claimant's] impairment(s) interferes with [the

3  claimant's] ability to function independently, appropriately, effectively, and on a sustained basis."

4  Id.  Third, if ratings are predominantly "none" or "mild," the impairment is determined to be not

5  severe, and the adjudicator must analyze the claimant's mental residual functional capacity.  Id.

6  § 416.920a(d)(1).  If the mental impairment is deemed severe, the adjudicator must determine

7  whether the impairment is equivalent in severity to a listed mental disorder.  Id. § 416.920a(d)(2); 20

8  C.F.R. Pt. 404, Subpt. P, App. 1.  Fourth, the ALJ's written decision must incorporate the findings

9  based on the application of this technique, including a specific finding for each of the functional

10 areas listed in step two.  Id. § 416.920a(e)(2).  Failure to follow these guidelines in a precise manner

11 is cause for remand.  See Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir. 2000) (holding that an

12 ALJ's failure to complete required psychiatric review technique form, the predecessor to the special

13 technique outlined in section 416.920a, required remand where claimant presented a colorable claim

14 of mental impairment).

15      The ALJ here did not apply the technique outlined above in a systematic manner, and it is

16 thus difficult to discern the reasoning behind the ALJ's conclusions.  The ALJ concluded under the

17 first step that claimant has a medically determinable mental impairment, but did not clearly indicate

18 which symptoms and diagnoses led him to reach that conclusion.  The ALJ must specify which

19 evidence he relied upon to reach his conclusions.  See Social Security Administration's Hearings,

20 Appeals, and Litigation Law manual ("HALLEX") at I-2-8-25 § C.2.c (instructing an ALJ to discuss

21 the weight assigned to various pieces of evidence and to state which evidence is more persuasive

22 and why).

23      Under the second step of the analysis, the ALJ summarily found that claimant "has only mild

24 restriction of activities of daily living, mild difficulties maintaining social functioning, mild

25 difficulties maintaining concentration, persistence, and pace, and no episodes of decompensation."

26 TR at 17.  The ALJ once again failed to indicate which particular facts led him to these ratings.

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   Under step three of the analysis, ratings of "mild" and "none" will lead to a determination

2   that the mental impairment is not severe.  Indeed, the ALJ appears to have made this finding at one

3   point in the record.  <u>See id.</u>  This conclusion is undermined by the ALJ's failure, at step two of the

4   analysis, to specify the facts he relied on in determining the ratings.  In addition, the conclusion that

5   claimant's depression under step three is not severe is at odds with the ALJ's earlier conclusion that

6   claimant's depression is a severe impairment.

7   Although it appears that the ALJ intended to follow the special technique for analyzing

8   mental impairments, the court finds that the ALJ committed an error of law by failing to remain

9   faithful to the procedural requirements of section 416.920a.  On remand, the special technique for

10   evaluation of mental impairments must be applied to claimant's mental impairments and

11   documented accordingly.

12

13   <u>CONCLUSION</u>

14   For the reasons stated above, the court GRANTS claimant's motion for summary judgment

15   and DENIES defendant's motion for summary judgment.  This action is hereby REMANDED to the

16   Commissioner pursuant to sentence four of 42 U.S.C. section 405(g) for further proceedings

17   consistent with the foregoing order.  The clerk shall close the file.

18

19

20   IT IS SO ORDERED.

21

22

23   Dated: May 17, 2006

24   _____

25   MARILYN HALL PATEL
     District Judge
26   United States District Court
     Northern District of California

27

28

16

**ENDNOTES**

1.      Normally, a claimant is directed to appeal a denial of his application by filing for reconsideration.  As defendant explains, the Social Security Administration published a notice in the Federal Register announcing a prototype for a new disability claims process in August 1999.  64 Fed. Reg. 47,218 (Aug. 30, 1999).  In December 2001, the Social Security Administration announced an extension of this prototype through June 28, 2002.  66 Fed. Reg. 67,347 (Dec. 28, 2001).  Claimant's case was designated as a prototype, TR at 33, and he was thus permitted to seek a hearing with an ALJ immediately after his application was denied.  See TR at 36–37.

2.      A claimant's "residual functional capacity" describes what work a claimant can still perform despite limitations due to his impairments.

3.      Defendant explains that a Tinel "test is performed by tapping the median nerve along its course in the wrist," and that a "Phalen's test is performed by placing one's elbows on the table with arms up, then bending the wrists down as far as possible while pressing the backs of one's hands together for 30 to 60 seconds."  Defendant claims that neither of these tests is completely accurate for diagnosing carpal tunnel syndrome.

4.      The ALJ did note that claimant received a series of chiropractic treatments, "but stopped seeking help after a psychological evaluation indicated that he was malingering."  TR at 19.  However, this episode occurred in 1978 after claimant fell from some scaffolding and injured his back, and does not serve as evidence that claimant is malingering in the present action.

UNITED STATES DISTRICT COURT
For the Northern District of California

17